1 Joseph G. Sauder (*pro hac vice* forthcoming)
jgs@sstriallawyers.com
2 Lori G. Kier
lgk@sstriallawyers.com
3 Davina C. Okonkwo
dco@sstriallawyers.com
4 **SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
5 Berwyn, Pennsylvania 19312
Telephone: (888) 711-9975
6 Facsimile: (610) 727-4360

7 Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
8 **NYE, STIRLING, HALE & MILLER, LLP**
33 West Mission Street, Suite 201
9 Santa Barbara, CA  93101
Telephone: (805) 963-2345
10 Facsimile: (805) 284-9590

11 *Attorneys for Plaintiffs and the Putative Class*

12 **UNITED STATES DISTRICT COURT**

13 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 TERESA GUTIERREZ and
MICHAEL CAMOU, individually,
15 and on behalf of all others similarly
situated,
16
Plaintiffs,
17
v.
18
SPRINT CORPORATION,
19
Defendant.
20

CASE NO.: 2:21-cv-03865

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

21

22 <u>**CLASS ACTION COMPLAINT**</u>

23 Plaintiffs Teresa Gutierrez and Michael Camou, individually, and on behalf of

24 all others similarly situated (the "Class"), bring this action against Sprint Corporation

25 ("Sprint" or "Defendant").  Plaintiffs make the following allegations pursuant to the

26 investigation of counsel and based upon information and belief, except to the

27 allegations specifically pertaining to them, which are based upon personal knowledge.

//

28

1

## I.   <u>NATURE OF THE ACTION</u>

1.     This class action arises from unconscionable contracts entered into between Sprint and customers of Sprint's Flex Lease Agreement program ("Flex Lease program" or "Flex Lease plan").[1] The Sprint Flex Lease program purports to provide customers options in order to obtain mobile phone devices (the "Devices") at a supposedly low monthly cost, through monthly installment payments and the ability to cancel the contracts after a set time period. In reality, however, consumers pay significantly more than the value of their Devices due to Sprint's ongoing monthly charges after the lease terms end, or are required to make additional payments at the end of the initial lease term for customers who want to own their devices, or are unable to cancel the program after the termination of the lease period despite attempting to do so.

2.     Customers report being told, at or around the initiation of their Flex Lease programs, that they would be notified when they were nearing the end of the plan periods and informed of their options.[2]  In fact, numerous customers claim that

_____

[1] Sprint variously refers to this program by several different names, including "Sprint Flex program," "Flex Lease Program," and "Flex Lease Agreement"; regardless of name, all plans bear the characteristics that give rise to the claims alleged herein.

[2] One consumer entered into a Flex Lease plan in the summer of 2017 to obtain a new phone for her daughter, who was headed to college in the Fall. She was told by Sprint that the phone would cost about $800 and that she would be required to make payments of $42 per month for 20 months, which would cease in or around the Spring of 2019. She was also told that Sprint would contact her one month before the plan ended to offer her the opportunity to keep the phone and to end the monthly payments. In or about November 2018, she contacted Sprint to cancel her plan after Sprint's coverage in her area became unreliable. The Sprint CSR offered to "move" her to a T-Mobile plan but did not disclose that there was cost associated with the move. Within a few hours after the call, she was charged a $1,200 termination fee; she immediately called Sprint to have her plan reinstated to which Sprint agreed – and charged her a $45 reconnection fee. Subsequently, in 2020, she contacted Sprint to see how many payments remained before the phone would be paid off. She was advised that she had "missed" her opportunity to cancel – despite having never been

N<small>YE</small>, S<small>TIRLING</small>, H<small>ALE</small> & M<small>ILLER</small>
33 W<small>EST</small> M<small>ISSION</small> S<small>TREET</small>, S<small>UITE</small> 201
S<small>ANTA</small> B<small>ARBARA</small>, C<small>ALIFORNIA</small> 93101

they were never notified—either before or after the exhaustion of the initial Flex Lease plan—of the option to pay off the Device at the end of the lease term so that they continue making monthly payments indefinitely.

3.     Other customers who notify Sprint after their leases end that they want to own their Devices report being unaware or misled when they learn that their ongoing monthly payments have not applied to the price to own the Devices so that they are required to make an additional payoff payment (either in one lump sum or on a monthly basis) to own the Devices, which results in consumers' payments to Sprint in amounts well over the value of the Devices -- after consumers have already paid their full value.

4.     Customers who attempt to cancel their contracts by returning their phones find that their efforts are intentionally frustrated.[3]

5.     Customers who call to exercise their option of paying off their Devices or cancelling their leases by returning their phones are sent to the website, and customers who have gone to the website to pay off their Devices are asked to call or use the chat function. Customers have reported being sent to confusing webpages where the links to purchase the Devices are hidden, or receiving emails from Sprint that are sent by a third-party, such as "InfoRequest," and thus overlooked. Customers

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

notified of the opportunity. As of February 2021, she had made over 30 monthly payments for her Device, paying over $1,000 over the purchase price and continued to make those monthly payments given a lack of options.

[3] One consumer who leased three phones from Sprint through the Flex Lease program called Sprint and asked to purchase his phones after the lease expired, but was told that he could only do so online. When he went online to purchase his phones and end the lease, the web page was slow and the link to purchase was hidden in various menus. He was unable to accomplish the purchase of his leased phones. When he later realized the lease payments were not going toward the payout cost of the devices, he went back onto the website where he was advised that he had to call Sprint or use the chat function to cancel his lease. He spent 45 minutes in the Chat function with Sprint, but the customer service representative ("CSR") was unable to facilitate the purchase and had to escalate his case.

CLASS ACTION COMPLAINT                                        Case No. 2:21-cv-03865

have had issues with contacting Sprint's customer service, being told they would receive a call back that never came.[4] Customers have also been forced to wait on hold on a call or in the chat function for lengthy wait times.[5]

6.     Flex Lease plan customers have also experienced Sprint's refusal to accept Devices for return – even if they have minimal wear -- or have been told that they were ineligible for the buyout option.[6]  Customers have been told that they were a poor credit risk, making them ineligible for upgrade so the only remaining options available to them were to pay the buyout costs or to continue to rent the Device.[7]

7.     Without a realistically available option to own their Devices or cancel their leases,  customers are left paying to lease their Devices indefinitely.

8.     Accordingly, Plaintiffs bring this action to redress Sprint's violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*), California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[4] Another consumer entered into two Flex Lease agreements in 2016 that he understood would expire in 2018. He was not advised by Sprint that, if he did not take action, his payments would continue indefinitely without applying toward the cost of the phone. As of January 2021, he had contacted Sprint multiple times seeking a resolution – each time being told by Sprint CSRs that his calls were being escalated and that someone will return his call in three to five days. His calls have not been returned. He has continued to be charged more than $38 per month per phone for over four years.

[5] *See supra* note 3 (customer reported spending 45 minutes in the chat function and being unable to reach a resolution).

[6] An additional consumer entered into a Flex Lease that extended until November 2019. Since November 2019, she has paid more than $494 and been told she needs to pay an additional $111.66. She has contacted Sprint but was advised that it will not accept the phone as a return because it has a small crack, though it remains in working condition.

[7] A California resident entered into a contract with Sprint for a Galaxy Note in 2018. She understood she would pay $39 per month for installment payments and would have the option of upgrading within six to nine months. More than nine months later, she contacted Sprint seeking an upgrade in April 2020. She was told that she was a poor credit risk, despite that she had always paid her cell phone bills on time, and was ineligible for upgrade. She was told she could instead buy her phone outright and lower her monthly payments to $14 per month. She agreed to do so, but it took three months for the lowered monthly charge to come into effect.

4

*et seq.*), and to seek recovery for common law fraud, conversion and unjust enrichment.

## II.   PARTIES

### PLAINTIFFS

#### Plaintiff Teresa Gutierrez

9.   Plaintiff Teresa Gutierrez is a resident of Downey, California.

10.   On or about December 7, 2017, Plaintiff Gutierrez leased two 64GB iPhone 8 Devices through Sprint's Flex Lease program.

11.   From approximately December 2017 to May 2019, or 18 months, Plaintiff Gutierrez paid $36.76 per month for each Device (including taxes and fees) for a total payment of $661.68 per Device.

12.   Plaintiff Gutierrez understood that after she had made 18 monthly payments on her Devices, the payments would represent the value of the Devices, or approximately $661.68 per Device.

13.   Plaintiff Gutierrez further understood that after making 18 monthly payments for each Device, she would own both of them outright.

14.   On or about May 7, 2019, Plaintiff Gutierrez received an email from Sprint indicating that, "It's time to choose your next move!" and that "Sprint Flex gives you flexibility and puts you in control. It's time to 'Flex' your potions – buy it, upgrade, return it or continue leasing."  To own the Device, she was told:

> Love the phone you have? Buy it in one lump sum or in six monthly
> payments any time after your 17th month is billed. Tap Buy now and
> sign in. Find the phone, click the 3 dots to the right and choose View
> agreement. App users tap Next steps for your device.

15.   Plaintiff Gutierrez wished to own her Devices, but because she understood that she had already paid more than their full value at the time she received the email from Sprint, she declined to pay the proposed "one lump sum" of $199.87 or "six monthly payments" of $33.31/month.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT                                    Case No. 2:21-cv-03865

16.    So, Plaintiff Gutierrez continued making monthly lease payments of $36.76 per month from May 2019 through the date of this Complaint.

17.    As a result of Sprint's unconscionable Flex Lease program, Plaintiff Gutierrez has been harmed and suffered damages, including, but not limited to overpayments for Device leases, excessive purchase prices for Devices, termination fees, and inconvenience.

**Plaintiff Michael Camou**

18.    Plaintiff Michael Camou is a resident of Paso Robles, California.

19.    On or about June 7, 2019, Plaintiff Camou leased a Samsung Galaxy S10E through Sprint's Flex Lease program.

20.    From approximately June 2019 to December 2020, or 18 months, Plaintiff Camou paid $33.52 monthly (including taxes and fees) for a total payment of $603.36 for his Device.

21.    Plaintiff Camou understood that after he had made 18 monthly payments on his Device, the payments would represent the value of Device, or approximately $603.36.

22.    After Plaintiff Camou finished paying the installments on his Device, he contacted Sprint because he wished to own it outright. He was advised that he could not own it until he completed an additional nine monthly payments of $20.84, or $187.56 total.

23.    Because Plaintiff Camou wishes to own his Device outright, he is currently paying nine additional payments of $20.84 after having already made 18 monthly payments for the Device and paying the full amount of its value.

24.    As a result of Sprint's unconscionable Flex Lease program, Plaintiff Camou has suffered and been subjected to various damages, including, but not limited to overpayments for Device leases, excessive purchase prices for Devices, termination fees, and inconvenience.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT**

25. Defendant Sprint is incorporated in the state of Kansas and headquartered in Overland Park, Kansas. Sprint sells and leases phones, entertainment devices, and related accessories.

26. On or about April 1, 2020, Sprint merged with T-Mobile US, but the Sprint brand continues to exist presently and upon information and belief Sprint users have not yet experienced a change to account maintenance.[8]

### III.   JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (i) there are 100 or more Class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

28. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

29. This Court has personal jurisdiction over Sprint because it has conducted substantial business in this District, and intentionally and purposefully placed Devices under its Flex Lease program into the stream of commerce within California and throughout the United States.

30. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Sprint regularly transacts business in this district, is subject to personal jurisdiction in this District, and, therefore, is deemed to be a citizen of this district. Additionally, Sprint advertises in this District and has received substantial revenue

---

[8] *See* https://www.t-mobile.com/support/account/t-mobile-sprint-merger-faqs (last visited March 5, 2021);
https://www.sprint.com/en/support.html?adobe_mc=MCMID%3D71497888640700 623583522160713689070718%7CMCORGID%3D1358406C534BC94D0A490D4 D%2540AdobeOrg%7CTS%3D1615921654 (last visited March 16, 2021).

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

7

1   and profits from its sales and leases of Devices under its Flex Lease program in this

2   district. Therefore, a substantial part of the events and/or omissions giving rise to the

3   claims herein occurred, in part, within this district.

## IV.   FACTUAL ALLEGATIONS

### A.   Sprint's Flex Lease Program

6   31.   Sprint offers a variety of wireless and mobile broadband products,

7   including wireless and wireline operations, internet services, ethernet services, web

8   services, telecommunications relay services, wireless voice and data services, and

9   mobile devices and broadband for the home. Sprint offers wireless and mobile

10  broadband products from a range of manufacturers, including Apple, BlackBerry,

11  HTC, Kyocera, LG, Motorola, Samsung, Sharp, Sonim, and ZTE. Sprint sells and

12  leases its wireless Devices through retail stores located throughout the United States

13  with retail prices ranging from a few hundred to a few thousand dollars.

14  32.   In July 2017, Sprint introduced its Sprint Flex program,[9] which—

15  according to Sprint—"gives customers the opportunity to enjoy their phone before

16  deciding what option (upgrade, continue leasing, return or buy) works best for their

17  lifestyle." Further,

18     Depending on device type, certain leases carry an option to upgrade to a new

19     device annually prior to expiration of the lease. The terms of our lease and

20     installment billing contracts require that customers maintain service otherwise

21     the balance of the remaining contractual obligation on the device is due upon

22     termination of their service. The subsidy program, which has been de-

23     emphasized, requires a long-term service contract and allows a subscriber to

24     purchase a device generally at a discount. In our non-Sprint branded postpaid

25     plan, we offer devices through an installment billing program while requiring

26

27   _____

28   [9] *See supra* note 1.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT                              Case No. 2:21-cv-03865

service to be purchased on a prepaid basis. The majority of Sprint's current postpaid handset activations occur on our Sprint Flex leasing program.[10]

33.    With the Sprint Flex Lease, "Sprint owns the phone." Customers may "lease it with affordable monthly payments and at the end of [their] agreement [their] options are to: (1) Upgrade it, (2) Own it by paying the remaining balance, either in one payment (contacting the online chat agent may be required for this) or in nine monthly installment payments, (3) Continue leasing month-to-month (these payments do not apply to the purchase of the [Device]), (4) Return it." The Flex Lease plan purports to have "low out-of-pocket costs and an annual upgrade option."[11]

34.    Sprint markets and advertises that "[i]t's easy to get your lease details online or in the My Sprint mobile app."[12]

35.    Sprint also markets and advertises that "[i]t's easy to get your upgrade details online or in the My Sprint mobile app." However, customers are unable to easily find lease details regarding the terms of the Flex Lease and are unable to easily find or understand details regarding their upgrade options under the Flex Lease program.[13]

---

[10] Sprint, Annual Report for the fiscal year ended March 31, 2019 at p. 2 (available at: https://www.sec.gov/Archives/edgar/data/101830/000010183019000022/sprintcorp201810-k.htm#s8925A97DDFA55204808914F6529AC721 [last visited March 10, 2021]).

[11] https://www.sprint.com/en/support/sprint-flex-lease.html#1 (last visited March 10, 2021).

[12] https://www.sprint.com/en/support/sprint-flex-lease.html#1 (last visited March 10, 2021).

[13] Plaintiff Gutierrez was never told that the monthly lease payment would continue after the original 18-month lease agreement. To date, she has paid over $1,400 for her two phones, which she does not yet own—and has been advised by Sprint that she would need to pay $187 per phone to own them.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

36.     Sprint markets and advertises that customers have the following options regarding their Devices when their Flex Lease ends. Sprints' Lease & Flex Lease page includes the following "Popular questions and answers":

What is Flex Lease and how does it work?

With Flex Lease, Sprint owns the phone. You lease it with affordable monthly payments and at the end of your agreement your options are to:

- Upgrade it
- Own it by paying the remaining balance, either in one payment (contacting the online chat agent may be required for this) or in nine monthly installment payments
- Continue leasing month-to-month (these payments do not apply to the purchase of the phone)
- Return it[14]

37.     However, at the time of purchase, the end-of-lease options under the terms of the Flex Lease program are not clearly communicated to customers by Sprint representatives.[15] In particular, customers are not advised that they will have to pay

_____

[14] https://www.sprint.com/en/support/sprint-flex-lease.html#1 (last visited March 10, 2021). One the same page, Sprint includes another discussion of "What happens when my lease ends?" which contains similar – but not identical – options and which tells consumers that they may be required to contact the online chat agent to pay of

[15] A New Jersey resident contacted Sprint on February 19, 2021 when he noticed that discounts on his plan had expired after the eighteenth month of his Flex Lease. He was told by representatives that his only options were to continue the lease (though payments would not apply toward the cost of the phone), send the phone back, or upgrade. However, when he first signed up for the Flex Lease program and spoke with a Sprint representative, he inquired specifically about what his obligation would be after the expiration of 18 months. He was assured then that he would only be responsible for paying the monthly charge for six more months, after which he

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

10

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   an additional amount to own their devices as a "remaining balance" once they have
2   fulfilled the requirements of their lease and paid the value of their Devices.

3   38.   Customers who attempt to understand the terms of their Flex Lease plans
4   at a later date are unable to find details pertaining to the options they have under the
5   Flex Lease through Sprint's website. Customers who contact Sprint seeking to
6   understand the terms of their Flex Lease are left further confused because they are
7   told conflicting information about their end-of-lease options.[16]

8   39.   Nor are customers informed at the time they purchase their Devices
9   regarding the purported requirement to contact Sprint at the end of the lease to select
10   an option, or that – if they did not contact Sprint – that Sprint would deem them to
11   have chosen to make indefinite monthly payments for their Devices. This requirement
12   is not listed under "What happens when my lease ends?" on the Sprint Lease & Flex
13   Lease Popular questions and answers webpage.[17]

14   40.   Despite Sprint's reference to apparently straight-forward options for
15   ending consumers' monthly payments when their Flex Lease agreements end, the
16   options are in fact confusing and difficult for consumers to utilize so that they
17   continue being charged monthly payments for the Devices.

18   41.   When customers realize that their leases have ended but that Sprint has
19   not notified them of their options – so that they are deemed to have accepted the
20   default indefinite monthly payments imposed upon them -- they have contacted Sprint

21   
22   would own the phone.
23   [16] *See supra* note 3. Further, An individual in New Jersey was told by
     representatives that his only options were to continue the lease (though payments
24   would not apply toward the cost of the phone), send the phone back, or upgrade.
     However, when he first signed up for the Flex Lease program and spoke with a
25   Sprint representative, he had inquired specifically about what his obligation would
     be after the expiration of 18 months. He was assured then that he would only be
26   responsible for paying the monthly charge for six more months, after which he
27   would own the phone.
28   [17] https://www.sprint.com/en/support/sprint-flex-lease.html#1 (last visited March
     10, 2021).

to complain about the lack of notification.   In response, Sprint customer service representatives advise customers that they had been notified when, in fact, they had not been.

42.    For customers who are aware that their leases have ended and who opt to own their phones by pay the "remaining balance," they expect that they have already paid the full balance on their Devices because their monthly payments during the lease term approximate the full value of the Devices. Sprint does not advise customers at the point of sale that their monthly payments will not be sufficient to cover the payoff amount for the Devices, or that there will be a remaining balance at the close of the 18-month Flex Lease agreement.

43.    In fact, customers who have made monthly installment payments on their Devices in excess of 18 months, and who seek to own their Devices, are told that they must pay hundreds of dollars to buyout their Devices—even after their payments exceed the value of the Devices.[18]   Other consumers who seek to own their phones outright are instead persuaded to move to new plans which require ongoing payments for the Devices, and are presented with obstacles when trying to end the lease.[19]

_____

[18] A Missouri resident entered a Flex Lease for a phone from Sprint in 2018. She understood that, beginning in August 2018, she would pay a monthly lease fee of $33.34 for 19 payments, or a total of $600.12. Then after 18 months, she would pay a flat fee of $199.88 and own the phone. Together, the 18 monthly payments and the $199.88 fee would pay off the $800 cost of the phone. The 18-month term of the Flex Lease expired in or around February 2020. Later in the year 2020, when looking into purchasing devices for his children, he realized he had been paying the $33.34 per month for the phone. He calculated that he had paid over $934. When he contacted Sprint seeking resolution, he was told he still had to pay the fee of $199.88 in order to end the contract.

[19] For example, when a California resident contacted Sprint in July 2020 to end his lease and pay the buyout fee, Sprint instead moved him to a new plan that put a $30 cap on his monthly calling and texting charges; however, this change adversely affected his service. So, one month later, he again called Sprint back and requested to pay off his lease and cancel his contract. This time, he was told that his contract

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT                                    Case No. 2:21-cv-03865

44.     Customers who decide to return their phones and terminate their ongoing payments to Sprint following the end of their leases are often unsuccessful in canceling their leases. For example, some customers are told that they are required to return their Devices using Sprint's return kits, but do not receive the kits in the mail despite repeated requests for them.[20]

45.     Customers who have made installment payments in excess of 18 months and entered into the month-to-month period of the Flex Lease may pay indefinitely for Devices that have a market value of much less than the total of their payments.

46.     Indeed, a recent account statement for Plaintiff Gutierrez's Devices indicates that her plans are both called: "Apple iPhone 8 Plus 64GB *Forever*" Leases (emphasis added).

47.     The time limitations and notification requirements contained in Sprint's Flex Lease program's end-of-lease options are unfair, unconscionable and inadequate to clearly communicate the responsibilities of Plaintiffs and members of the Class. Among other things, Plaintiffs and Class Members had no meaningful choice in

_____

would be canceled if he clicked on an email that would be sent to him by Sprint. Because the email was sent by "InfoRequest" rather than by Sprint, it took him several days to locate it before he was able to click on it and – finally – end his monthly payments.

[20] One Texas resident who had been a Sprint customer since 1999 leased an iPhone from Sprint in 2017. She understood her monthly payment was about $40 and that she would have paid it off after about 18 payments. In September 2019, she purchased a new phone from the Apple store and called Sprint to terminate service on her prior phone. Sprint verbally agreed, but continued to charge her $40 monthly. In December of 2020, she realized that Sprint had failed to discontinue the monthly charge as promised, so she called Sprint to notify them that she was being overcharged.  During the call, Sprint verbally agreed to credit her for the months she had paid since she had canceled the plan and to send a return kit for the old phone. By March 2021, she had not received a return kit from Sprint, so she contacted them once again and they promised to mail a return kit. On or about April 4, 2021, she received a call from Sprint asking for more information in order to be able to send the return kit and was told that it would be sent after another seven-to-ten days.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  determining these time limitations or notification requirements, the terms of which
2  unreasonably favored Sprint. Customers report that attempts to contact Sprint to
3  negotiate the terms of the Flex Lease are unsuccessful. A gross disparity in
4  information and bargaining power exists between Sprint and the Class Members, and
5  Sprint knew or should have known that the terms of the Flex Lease program
6  agreement were unfair and ambiguous at the time of contracting and would lead to
7  confusion and unfair overpayments with respect to the value of the Devices in
8  question and excessive fees.

9      48.   The mandatory arbitration and class action waiver contained in Sprint's
10 Flex Lease program's agreement is unfair, unconscionable, and inadequate to protect
11 the rights of Plaintiffs and members of the Class. Among other things, Plaintiffs and
12 Class Members had no meaningful choice in determining these dispute resolution and
13 arbitration obligations requirements, the terms of which unreasonably favored Sprint.
14 Customers report that attempts to contact Sprint to negotiate the terms of the Flex
15 Lease are unsuccessful. A gross disparity in information and bargaining power existed
16 between Sprint and the Class Members, and Sprint knew or should have known that
17 the terms of the Flex Lease program agreement were unfair and ambiguous at the time
18 of contracting and would lead to confusion and unfair overpayments with respect to
19 the value of the Devices in question and excessive fees.

20     49.   Shortly after the Sprint Flex Lease program came into existence, news
21 coverage of the program described consumers' frustration with the extended lease
22 payments paid by them that did not apply to purchase of their phones.[21] In response
23 to that article, another news source reported that Sprint Senior Vice President of
24 Corporate Communications, David Tovar, defended Sprint's lease program structure,

25
26 _____
27 [21] https://www.kansascity.com/news/business/technology/article185873858.html
28 (last visited March 16, 2021).

14

saying that "'we are a publicly traded company' where only a 'small percentage' of customers end up paying more than a phone's full price."[22]

50.     Indeed, in its 2018 Annual Report, Sprint advised the U.S. Securities and Exchange Commission that: "Our device leasing program exposes us to risks, including those related to the actual residual value realized on returned devices, higher churn and increased losses on devices."[23]

51.     Plaintiffs and the Class Members have complied with all obligations under the Sprint Flex Lease program agreement, or otherwise have been excused from performance of said obligations as a result of Sprint's conduct described herein.

**B.     Consumer Complaints about the Sprint Flex Lease program**

52.     The following representative complaints in online forums demonstrate the widespread nature of consumers' issues with Sprint's Flex Lease program:

**Consumer No. 1:**

"Today I discovered that Sprint's new Flex Plan program (the newly implemented replacement for the previous iPhone forever and Android forever plans) is intentionally orchestrated so that you will not end up owning your device even after 18 months of paying toward the lease.

Unlike every other major carrier who applies your monthly lease charges to eventually owning the device, Sprint requires that you VERBALLY opt into this option or else the device will belong to them forever. If I had not discovered this by accident, they will happily charge you the $20-30/mo lease fee FOREVER. They can end up charging you x2 or x3 or more of the

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

---

[22] https://bgr.com/2017/11/27/sprint-flex-lease-costs-problems/ (last visited March 16, 2021).
[23] Sprint, Annual Report for the fiscal year ended March 31, 2019 at p. 2 (available at: https://www.sec.gov/Archives/edgar/data/101830/000010183019000022/sprintcorp201810-k.htm#s8925A97DDFA55204808914F6529AC721 [last visited March 10, 2021]).

original cost of the device, and at the end of all that it will still not belong to you. I have paid double the value of this iPhone 6s and I still have to pay $174 to them to officially own the device. This is a downright scandal and absolutely unscrupulous treatment of customers.

I am a corporate employee and even I was caught off guard by this insanity. I'm unsure of how it can be legal at all, and their in store systems keep "failing" to process this change, leading me to believe that they never intended for anyone to own their device at a fair market cost in the first place.

Very disturbed."[24]

**Consumer No. 2:**

"Sprint's Flex Lease program is designed for you to get a phone through them for 18-months, and upgrade to the newest/latest model for another 18-months. After the 18-months, they give you the option to pay off your phone either over the next 6-months in monthly installments, or in one lump sum payment. I'm currently on month 23 out of 24 (I got my phone in Feb. '18).

After the 18 months, I called Sprint and talked about my options for upgrading, but ultimately decided on paying it off and keeping the phone. I also asked people in the store TWICE (while I was considering the Samsung Galaxy S10) if I can just continue paying on the phone and it will be paid off. They confirmed that you can do that both times.

---

[24] https://www.reddit.com/r/Sprint/comments/6x1bsp/the_flex_lease_program_is_a_scam/
Posted by u/Rosieforthewin 3 years ago (last visited March 17, 2021).

CLASS ACTION COMPLAINT                                    Case No. 2:21-cv-03865

I called Sprint today to pay the last $41.67 installment, when the representative told me that the phone payoff is $249 and change. I about blew a gasket. I told them I called 5 months ago to make it clear I wanted to pay the phone off, AND spoke to store reps TWICE who confirmed I just needed to keep paying it. The lady on the phone confirmed my phone call from August was listed as 'disconnected', thus the lease was never cancelled by Sprint. The lady also told me that the five previous payments of $41.67 were part of an extended lease, and thus did not count towards the paying down of the phone to own it. **In theory, if I didn't say anything about this for the next 5 years, I'd have to make 60 payments of $41.67, which is good in total for nearly 3 more iPhone X's at current value.**

After getting mad, they offered me two months of phone payment credit ($41.67 x 2-mo) if I agreed to pay off the phone that day. I told her I'm no longer going to pay another dime on the phone, and being a Sprint customer since 2005 I'd like to swap my phone for one I won't have to pay anything on. Long story short, after making it clear I would not be paying another dime after being misinformed three times, they counted the five months of payment towards the payoff of the phone.

IF you're leasing through Sprint, make sure you call and get verification that your lease has been cancelled after the first 18 months, and your future phone payments are going towards the payoff of the phone! Do NOT let them rip you off by not telling you your lease is up and your payments are now going towards an 'extended lease'.

**TL;DR** - I apparently did not make it clear enough to the people at Sprint (all 3 times) that I wanted my last 6 months of payments to go towards paying off

---

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

my phone. It was listed as an 'extended lease' after the first 18 months, so the last 5 payments I made were not counted towards paying off the phone. Luckily, I got the issue resolved, but I can only imagine how many others are being screwed by this."[25]

**Consumer No. 3:**

"This lease is a scam. . . . I bought a Samsung S8 in Nov 2017. The device cost $750. I signed up to pay $31.25 every month. I have so far paid $1062.25. The device was paid off completely in 24 months. Its 34 months now. I called up Sprint to refund the extra $312 . I had been to the store in Jan 2020 to ask for my phone to be repaired. The guy told me it was better to complete the lease in a few months time as it would cost more to get it repaired. Since it was a simple screen crack, I decided to wait.

[In] the past 3 days , I have spent close to 10 hours speaking to 6 different people-

. . .

Daniel(her supervisor) who point blank said **Sprint will not return the money**. I asked him- had I not called in the next 10 years, would Sprint continue to charge me and he said he saw nothing wrong if I paid $3000 for a $750 phone. Conv id- I996242117.

. . .

1. I signed an agreement in Nov 2017. The agreement you sign, its fine print is not available anywhere. My account – my documents where it is

[25]https://www.reddit.com/r/personalfinance/comments/es5rsz/be_careful_when_you
_get_a_phone_using_sprint_flex/ Posted by u/SandmanSupMan 1 year ago (last visited March 17, 2021).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT                                    Case No. 2:21-cv-03865

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

supposed to be is EMPTY. **Essentially- you cannot see the original [f]ull length contract agreement once it is signed.** The agreement is not available on line. See attachments 1 and 2 .

So if you don't remember when exactly you signed the contract, you are stepping into the first pothole.

2. If you go to your online account- only 13 previous month payments are available at any point of time. SO YOU CANNOT FIGURE OUT when the contract started. See attachment 3.

3. The **summary of the contract lines out what** happens in 18 months. It does NOT spell out specifically what happens after the amount is paid off. IT ambiguously allows Sprint to charge you for a device that has been paid off long ago. **You can end up paying DEFINITELY more than the cost of the device.** This can happen to most people and probably does going by the number of complaints on the forum. Sprint considers this additional revenue and brags about it. Its representatives endorse it .

4. Even after paying $1062 for a $750 device, numerous conversation with the representatives, it still says- SPRINT owns the phone and I must pay $42 to OWN it again!!"[26]

**Consumer No. 4:**

"I reached the end of my 18-month Flex lease plan. I'm now ready to purchase

---

[26] https://www.reddit.com/r/cellphones/comments/iw1413/sprint_flex_lease_is_a_sca mbeware/ Posted by u/Customer56 5 months ago (last visited March 17, 2021).

CLASS ACTION COMPLAINT                                    Case No. 2:21-cv-03865

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

my device. **But, I cannot.** Why? Because I live in a state (NY) where purchasing "goods" is prohibited. To me, this is scandalous and should have been brought to my attention two-years ago or during the 18-month time period.

During the life of the flex lease program, I was always reminded by Sprint customer service, "You have the option to own your phone at the end of the lease or return it back to us." In fact, a billing expert went into the account and did calculations for how much I'll be paying at the end of my lease plan -- - $42.00 a month until I pay off the $250.00 to fully own the device.

Here I am, at the end of my lease plan and I'm unable to do that.

**What are my options?** Pay the extended lease plan price ($42.00 per month) or upgrade my device.

This is quite unfair. I'm not sure why there's a law to govern Sprint from being able to sell their rented "goods" to customers, but why didn't NY Sprint store employees made customers aware of this before they sign the contract? It's safe to say that I was lied to.

And I find this to be illegal. Lying to customers in order to make a sale is an illegal business practice if caught. Furthermore, it's on the contract and I'm aware that it's on the contract. But why tell a customer they'll be able to purchase the device at the end of their contract but when they go to do it, they're unable to?

I'm thinking about filing a report with the FTC, also filing a report with NY

20

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Attorney General, and also contacting Sprint via e-mail so this matter can be further explored.

I'm upset for a few reasons:

> My expectations were built up due to a false business practice: lying to the customer in order to acquire a sale and a locked-in contract.

> Employees building up expectations throughout the life of the lease only to realize a customer cannot own their device at the end in the states where "goods" cannot be purchased.

> The rent price is the same as the "extended lease" price.

> Words are being used interchangeably to manipulate customers: "rent charge" versus "extended lease fee." Sprint customer service says, "The rent charge fee is the extended lease fee." However, the contract fine-print says otherwise. Then, goes into explaining how the rent charges are determined.

> I'm upset that I cannot own my device. But I'm required to either pay the extended lease amount, upgrade the device, or return it."[27]

**Consumer No. 5**:

---

[27] https://www.reddit.com/r/Sprint/comments/keoafz/flex_lease_extremely_unhappy_i ve_reached_the_end/ Posted by u/thisfilmkid 2 months ago (last visited March 17, 2021).

CLASS ACTION COMPLAINT                                        Case No. 2:21-cv-03865

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  Kelsey of Twin Falls, ID

2  Original review: Jan. 16, 2021

3  I signed up with them and was told on the spot at Sprint that I was signing up

4  for an 18-month flex plan. I purchased a phone with them and signed up for

5  unlimited everything. I was told that my monthly bill would be $70. I was

6  also told that I could get out of my plan at any time within the 18 months with

7  no cancellation fees and no product fees as long as I returned the phone. It

8  was $70 for about 4 months and then my bill shot up to $170! Uhhhh no

9  thank you! So I called and they removed the charges for the month and the

10  next month it was back up to $170.

11  So I cancelled and told them they are scamming customers. Then, I get a final

12  bill (which threw me off because I paid off my bill before I cancelled) and it

13  said I owed $530! So I immediately call them. They said it's cancellation fees

14  and charges for the phone. I told them what I was told in the store and they

15  called me a liar! Said that I have to pay the $530 or it'll be sent to collections.

16  I do NOT recommend sprint unless you love being scammed out of money.

17  They will lie to your face and lure you in. Stay clear of them![28]

18  **Consumer No. 6**:

19  Complaint Date: 01/24/2021

20  My lease was up with Sprint and I have switch to ******* trading my phone

21  into them as of January 11th. You have sent me a bill with both an equipment

22  charge of purchasing the old phone as well as a cancelation charge. First I

23  leased the phone, did not purchase it and no longer have it so I certainty can't

24  pay you for something I didn't buy. Second I did not cancel this lease early, I

25  made all payments in the lease agreement. I already spoke to customer service

26  

27  [28] https://www.consumeraffairs.com/cell_phones/sprint_pcs.htm?page=2 (last

28  visited March 17, 2021).

when I called to inquire about my last bill and if you listen to the recording from 1/17/2021 at 12:31PM your customer service representative agreed that this would be handled between ******* and Sprint as I no longer have the phone. Any money you feel you are due will have to be obtained from ******* as they now have the phone. Much like if I were to lease a car from ****** and then when the lease was up lease a *****, ****** would not come to me pay for the remainder of the car before leasing the *****. ***** would pay ****** to have the car on their lot or I would return the car to ******. These are much smaller numbers but the principle is exactly the same. ******* has chosen to take the phone so they would have to pay you as its on their "lot".[29]

**Consumer No. 7:**

"T-mobile won't even let us end our Sprint Flex Lease and move over to a T-mobile Plan.

I have 6 months left on my Galaxy S10 that I pay $37.50 a month for. From what I've been told returning my phone will cost $250 and returning my phone and ending service would be over $500.

I had wanted to get a T-mobile plan and an iPhone but was told I'd have to pay over $500 to do so.

So then I thought maybe I could just upgrade my S10 thru Sprint Flex but was told that resets my lease/contract back to 18 months. I don't want to be part of Sprint now that it is owned by T-mobile I wanted to get a phone from T-mobile and have one of their plans and be done with Sprint.

---

[29] https://www.bbb.org/us/wa/bellevue/profile/mobile-phone-service/sprint-now-part-of-t-mobile-1296-1000100605/complaints (last visited March 17, 2021).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Today I went to the T-mobile store because I figured maybe I could return my S10 and use the sim card in an unlocked phone I own and just keep the service for the remaining 6 months but they said I'd have to still pay $250 to return the phone because service and lease are separate.

I used to be a fan of T-mobile and their MVNO's but I think I lost all respect for them now and will give Verizon a Try in 6 months when my Flex lease is over... screw T-mobile.

I'm thinking of looking into Xfinity Mobile Since it uses Verizon's network... I don't want to support T-mobile in anyway because of this."[30]

53.     As detailed herein, Sprint knew, or had reason to know, about the unfair, ambiguous and confusing nature of its Flex Lease program terms.[31]

### C.     Plaintiffs' and Class Members' Reasonable Expectations

54.     In entering the Sprint Flex Lease agreements, Plaintiffs and the Class expected their Flex Lease plans to end upon their decision to do one of the following: upgrade their Devices, return their Devices, or accept ownership of their Devices once their payments reached the full value of the Devices.

55.     Plaintiffs and the Class reasonably expected Sprint to clearly disclose the notification requirements, time constraints, and risks regarding the end-of-lease options at the time the contracts were formed with consumers -- specifically, that the

---

[30] https://www.reddit.com/r/tmobile/comments/ftl0u4/sprint_flex_lease_at_tmobile_after_merger/ Posted by skuly1775 (last visited March 23, 2021).

[31] Sprint, Annual Report for the fiscal year ended March 31, 2019 at p. 2 (available at: https://www.sec.gov/Archives/edgar/data/101830/000010183019000022/sprintcorp201810-k.htm#s8925A97DDFA55204808914F6529AC721 [last visited March 10, 2021]).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Sprint Flex Lease program could have them paying substantially more than the value of the Device under a continued lease.

56.     As a result of the Flex Lease program agreement terms alleged herein, Plaintiffs and the Class did not receive the benefit of their bargain, their expectations regarding the Sprint Flex Lease Program's termination were not met, and they were subjected to overpayments for Device leases, excessive purchase prices for Devices, termination fees, and inconvenience.

## V.     CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action on their own behalf, and on behalf of the following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

**Nationwide Class:**

All persons or entities in the United States who purchased or leased one or more Devices under the Sprint Flex Lease Program.

Or, in the alternative,

**California Subclass:**

All persons or entities in California who purchased or leased one or more Devices under the Sprint Flex Lease Program.

58.     Together, the Nationwide Class and the California Subclass shall be collectively referred to herein as the "Class." Excluded from the Class are Sprint, its affiliates, employees, officers and directors, persons or entities that purchased or leased Devices under the Sprint Flex Lease Program for purposes of resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

59.     <u>Numerosity</u>:  The Class is so numerous that joinder of all members is

25

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the possession of Sprint and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that the Class consists of hundreds of thousands, if not millions, of persons and entities that were deceived and harmed by Sprint's conduct.

60.  <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of fact and law exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members.  These common factual and legal questions include, but are not limited to:

a.  whether Sprint clearly communicated the end-of-lease options of its Flex Lease program when the agreements were formed with Plaintiffs and Class members;

b.  whether Sprint clearly communicated the time constraints and notification requirements for the end-of-lease options of its Flex Lease program with Plaintiffs and Class members when the agreements were formed;

c.  whether Sprint's Flex Lease program's end-of-lease option terms are unfair and unenforceable;

d.  whether Sprint's conduct with regard to its Flex Lease program violated the California Unfair Competition Law;

e.  whether Sprint's conduct with regard to its Flex Lease program violated the California Consumers Legal Remedies Act;

f.  whether Sprint's conduct resulted in common law fraud;

g.  whether Sprint's conduct resulted in unlawful conversion;

h.  whether Sprint's conduct resulted in its unjust enrichment at the expense of Plaintiffs and the Class;

i.  whether Plaintiffs and the Class are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief; and

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

2

3

4

5

6

7

8

9

10

11

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

j.  whether the Court should apply the law of California to the entire Class because some of Sprint's conduct emanated from conduct within California.

61.    <u>Typicality</u>:  All of Plaintiffs' claims are typical of the claims of the Class since each Sprint Flex Lease was advertised with the same type of false and/or misleading statements, regardless of Devices having been purchased or leased. Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, overpayments for Device leases, purchase prices for replacement Devices, termination fees, etc. arising out of Sprint's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

62.    <u>Adequacy</u>:  Plaintiffs are adequate Class representatives because their interests do not materially or irreconcilably conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

63.    <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Sprint's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management

27

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Sprint's records and databases.

64.     Sprint has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

## VI.   <u>VIOLATIONS ALLEGED</u>

### <u>COUNT I</u>

## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

## ("UCL")

## (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

## (On Behalf of the California Class)

65.     Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

66.     California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.,* prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

67.     Sprint has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct and statements described above, and by knowingly and intentionally contracting with Plaintiffs and the Class under the unfair, confusing, and ambiguous terms of the Sprint Flex Lease program, including referring to the payoff amounts for its Devices following the lease termination as "remaining balance." Plaintiffs and the Class could not reasonably be expected to understand or discover the true nature of the Flex Lease terms at the point of

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

28

contracting.

68.    Sprint's acts and practices have confused and misled Plaintiffs and are likely to confuse and mislead the public. In failing to clearly communicate the end-of-lease terms of the Flex Lease program to Plaintiffs and the Class and to provide terms that do not result in unfair overpayments towards a Device under the Flex Lease program, Sprint breached its duties to clearly disclose these facts and use fair business practices, violated the UCL, and caused injuries to Plaintiffs and the Class. The unfair and ambiguous terms created by Sprint pertained to information that was material to Plaintiffs and the Class, as it would have been to all reasonable consumers.

69.    The injuries suffered by Plaintiffs and the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class could have reasonably avoided.

70.    Sprint's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

71.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Sprint, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT II

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")

**(Cal. Civ. Code §§ 1750 et seq.)**

**(On Behalf of the California Class)**

72.    Plaintiffs and the Class re-allege and incorporate by reference the

29

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

73.   Sprint is a "person" as that term is defined in California Civil Code § 1761(c).

74.   Plaintiffs and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

75.   Sprint engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally selling and leasing Devices to Plaintiffs and the Class under the Flex Lease program terms that were unfair, confusing, and ambiguous. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(13)   making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions;

(a)(14)   representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of California Civil Code Section 1770(a)(14);

(a)(16)   representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and

(a)(19)   inserting an unconscionable provision in the contract.

76.   Sprint's unfair or deceptive acts or practices occurred repeatedly in Sprint's trade or business and were capable of deceiving a substantial portion of the purchasing public, including referring to the payoff amounts for its Devices following the lease termination as "remaining balance."

77.   Sprint knew that the Flex Lease program would create overpayments for Device leases, excessive purchase prices for Devices, and unfair termination fees as a result of reasonable and foreseeable use by consumers.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

78.     Sprint was under a duty to Plaintiffs and the Class to clearly disclose the nature of such contractual provisions because:

(a)     Sprint was in a superior position to know the true state of facts about the potential outcomes of the terms of the Flex Lease program;

(b)     Plaintiffs and the Class could not reasonably have been expected to understand or discover that the terms of the Flex Lease program were not what they expected due to Sprint's advertisements and representations;

(c)     Sprint knew that Plaintiffs and the Class could not reasonably have been expected to understand or discover the unfairness of the terms; and

(d)     Sprint entered contracts with Plaintiffs and the Class without making the terms clear to the Plaintiffs and the Class.

79.     In failing to make the terms of its Flex Lease program clear at the time of sale, Sprint has knowingly and intentionally concealed material facts from Plaintiffs and Class members, and breached its duty not to do so.

80.     The facts about Sprint's Flex Lease program concealed or not disclosed by Sprint to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Devices under the Flex Lease program or to pay a lesser price. Had Plaintiffs and the Class been apprised of and understood the terms, they would not have purchased or leased Devices under the Flex Lease program or would have paid less for them.

81.     Plaintiffs have provided Sprint with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and currently seek injunctive relief. After the 30-day notice period expires, Plaintiffs will amend this complaint to seek monetary damages under the CLRA.

82.     Plaintiffs and the Class' injuries were proximately caused by Sprint's unfair and deceptive business practices.

83.     Therefore, Plaintiffs and the Class are entitled to equitable and monetary relief under the CLRA.

CLASS ACTION COMPLAINT                                    Case No. 2:21-cv-03865

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## COUNT III

## COMMON LAW FRAUD

### (On Behalf of the Nationwide Class, or Alternatively, the California Class)

84.     Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

85.     Sprint made material misstatements of fact to Plaintiffs and Class Members regarding the end of lease options and Device ownership terms of the Flex Lease program, including referring to the payoff amounts for its Devices following the lease termination as "remaining balance." As a result, Plaintiffs and the Class were fraudulently induced to lease the Class Devices.

86.     These misstatements made by Sprint were made with knowledge of their falsity, and with the intent that Plaintiffs and members of the Class would rely upon them.

87.     As described herein, Sprint fraudulently leased and sold Class Devices under the unfair, unclear, and ambiguous terms of the Flex Lease program that effectively prevented purchasers from leasing and purchasing the Devices through alternative and competitor lease programs.

88.     At the time that Sprint made these misrepresentations and concealments, and at the time that Plaintiffs and Class Members leased the Class Devices, Plaintiffs and the Class were unaware of the falsity of these misrepresentations, and reasonably believed them to be true.

89.     In making these representations, Sprint knew they were misleading and intended that the Plaintiffs and Class Members would rely upon such misrepresentations.

32

90.     Plaintiffs and Class Members did in fact rely upon Sprint's misrepresentations concerning leasing and ownership of the Devices through the Flex Lease program.

91.     As a direct and proximate result of Sprint's deceptive, fraudulent, and unfair practices, Plaintiffs and Class Members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

92.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Sprint for damages and declaratory relief.

## COUNT IV
## CONVERSION
**(On Behalf of the Nationwide Class, or Alternatively the California Class)**

93.     Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

94.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Sprint.

95.     Plaintiffs and Class members have an ownership right to the monies paid for the Devices leased and sold under the Sprint Flex Lease program by Sprint.

96.     Sprint has wrongly and intentionally asserted dominion over Plaintiffs and Class members' payments illegally diverted to it under its Flex Lease program agreements, and consequential damages resulting therefrom. Sprint has done so every time Plaintiffs and Class members paid to lease or purchase a Device under its Flex Lease program expecting to own the Device after the lease came to end.

97.     As a direct and proximate cause of Sprint's conversion, Plaintiffs and Class members suffered damages in the amount of the payments made under the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Sprint Flex Lease program that exceeded the cost of the Devices being leased or sold, and in the amount of consequential damages resulting therefrom.

## COUNT V

## UNJUST ENRICHMENT

## (On Behalf of the Nationwide Class, or Alternatively, the California Class)

98.  Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

99.  Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against Sprint.

100.  Plaintiffs and the Class conferred a benefit on Sprint by leasing and purchasing Devices under the Flex Lease program.

101.  Sprint had knowledge that this benefit was conferred upon it.

102.  The benefit conferred on Sprint by Plaintiffs and the Class was at their expense.

103.  Because Sprint has been unjustly enriched at the expense of Plaintiffs and the Class, its retention of this benefit under the circumstances would be inequitable.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully requests that this Court:

A.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes, as defined above;

B.  Appoint Plaintiffs as the representative of the Class and their counsel as Class Counsel;

34

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

C.     Award all actual, general, special (including treble), incidental, statutory, and consequential damages to which Plaintiffs and the Class are entitled;

D.     Award pre-judgment and post-judgment interest on such monetary relief;

E.     Grant appropriate injunctive and/or declaratory relief;

F.     Award reasonable attorneys' fees and costs; and

G.     Grant such further relief that this Court deems appropriate.


Dated: May 6, 2021                    NYE, STIRLING, HALE & MILLER, LLP


By:    _/S/ Alison Bernal_
           Alison M. Bernal, Esq.
           alison@nshmlaw.com
           **NYE, STIRLING, HALE & MILLER, LLP**
           33 West Mission Street, Suite 201
           Santa Barbara, CA  93101
           Telephone: (805) 963-2345
           Facsimile: (805) 284-9590
           Facsimile: (610) 727-4360

           Joseph G. Sauder, Esq. (*pro hac vice* forthcoming)
           jgs@sstriallawyers.com
           Lori G. Kier, Esq.
           lgk@sstriallawyers.com
           Davina C. Okonkwo, Esq.
           dco@sstriallawyers.com
           **SAUDER SCHELKOPF LLC**
           1109 Lancaster Avenue
           Berwyn, Pennsylvania 19312
           Telephone: (888) 711-9975
           Facsimile: (610) 727-4360

           *Attorneys for Plaintiffs and Putative Class*

## VIII.  **DEMAND FOR JURY TRIAL**

Plaintiffs TERESA GUTIERREZ and MICHAEL CAMOU, on behalf of themselves and the putative class, hereby demand a trial by jury of all claims so triable in the above-referenced matter.

Dated: May 6, 2021                    NYE, STIRLING, HALE & MILLER, LLP

By:   _/S/ Alison Bernal_
     Alison M. Bernal, Esq.
     alison@nshmlaw.com
     **NYE, STIRLING, HALE & MILLER, LLP**
     33 West Mission Street, Suite 201
     Santa Barbara, CA  93101
     Telephone: (805) 963-2345
     Facsimile: (805) 284-9590
     Facsimile: (610) 727-4360

     Joseph   G.   Sauder   (*pro   hac   vice* forthcoming)
     jgs@sstriallawyers.com
     Lori G. Kier
     lgk@sstriallawyers.com
     Davina C. Okonkwo
     dco@sstriallawyers.com
     **SAUDER SCHELKOPF LLC**
     1109 Lancaster Avenue
     Berwyn, Pennsylvania 19312
     Telephone: (888) 711-9975
     Facsimile: (610) 727-4360

     *Attorneys for Plaintiffs and Putative Class*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT                    Case No. 2:21-cv-03865